BRONSTER FUJICHAKU ROBBINS
A Law Corporation

MARGERY S. BRONSTER        4750
REX Y. FUJICHAKU             7198
ANTHONY "T.J." QUAN          7903
1003 Bishop Street, Suite 2300
Honolulu, HI  96813
Telephone: (808) 524-5644
Facsimile:  (808) 599-1881
E-mail:    mbronster@bfrhawaii.com
           rfujichaku@bfrhawaii.com
           aquan@bfrhawaii.com

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER L. WANGER     CA 164751
(*Pro Hac Vice* pending)
ANA GUARDADO              CA 286732
(*Pro Hac Vice* pending)
One Embarcadero Center, 30th Floor
San Francisco, CA  94111
Telephone: (415) 291-7400
Facsimile:  (415) 291-7474
E-mail:    cwanger@manatt.com
           aguardado@manatt.com

Attorneys for Plaintiff RSMCFH, LLC

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| RSMCFH, LLC, a Hawaiʻi limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FAREHARBOR HOLDINGS, INC., a Delaware corporation,<br><br>Defendant. | CIVIL NO. _____<br><br>**CIVIL COMPLAINT FOR DAMAGES FOR:**<br>**(1) VIOLATION OF SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934;**<br>**(2) FRAUD;**<br>**(3) BREACH OF STOCK SUBSCRIPTION**<br>(*caption continued in next page*) |

**AGREEMENT AND CERTIFICATE OF INCORPORATION; AND (4) VIOLATIONS OF HAW. REV. STAT. SECTIONS 485A-501 AND 485A-509 OF THE HAWAII UNIFORM SECURITIES ACT**

**[DEMAND FOR JURY TRIAL]**

Plaintiff, RSMCFH, LLC ("Plaintiff"), files this Complaint against Defendant, FareHarbor Holdings, Inc. ("FareHarbor" or the "Company") and, demanding trial by jury, complains and alleges as follows:

## I.

## SUMMARY OF ACTION

1. This action involves claims for violation of the federal securities laws in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, fraud, violations of Haw. Rev. Stat. chapter 485A and breaches of a written Stock Subscription Agreement and Certificate of Incorporation.  Plaintiff was induced to purchase the Series B Preferred stock of FareHarbor based on

FareHarbor's material misrepresentations and concealment of material information relating to FareHarbor's capitalization, including information about the terms of certain outstanding warrants issued by FareHarbor that were dilutive to Plaintiff's stake in FareHarbor and that entitled the warrant holders to acquire a substantial number of Series B shares on terms much more favorable than those applicable to Plaintiff's Series B stock purchase.  After FareHarbor was acquired by Booking Holdings Inc. ("Booking"), Plaintiff learned of the undisclosed warrant terms and their dilutive effect on Plaintiff's interest in FareHarbor and complained to FareHarbor about its concealment of the warrant terms.  FareHarbor subsequently canceled Plaintiff's Series B stock and wrongfully failed to pay Plaintiff any amount for its shares.  Plaintiff brings this action to recover the more than $10 million in damages caused by FareHarbor's wrongful acts.

## II.

## <u>THE PARTIES</u>

2.    Plaintiff is a Hawai'i limited liability company with its principal place of business in Honolulu, Hawai'i.  Its members consist of seven individuals.  Five of the members are citizens of

Hawai'i, one member is a citizen of California and one member is a citizen of Nevada.

3.   FareHarbor is a Delaware corporation with its principal place of business in Denver, Colorado.

## III.

### JURISDICTION AND VENUE

4.   This Complaint is filed and this action is instituted under Section 10(b) of the Exchange Act (15 U.S.C. §§ 78j(b), 78b-1 and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 24010.b-5) to recover the damages caused by FareHarbor's fraud in connection with the sale of $5 million worth of its Series B Preferred stock to Plaintiff pursuant to a written Series B Preferred Stock Subscription Agreement (the "Subscription Agreement").

5.   This Court has original and exclusive jurisdiction over the subject matter of this civil action under 28 U.S.C. §§ 1331 and 1332 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).  This Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.   The amount in controversy exceeds, without interest and costs, the sum or value specified in 28 U.S.C. § 1332.

CIVIL COMPLAINT FOR DAMAGES

7.     Venue in this Court is proper pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) because FareHarbor transacts business on a continuous basis within this District, and may be found here, within the meaning of 15 U.S.C. §§ 15, 22 and 28 U.S.C. § 1391.    Further, a substantial part of the events or omissions giving rise to the claims in this action occurred in material part within this District.

8.     In connection with the acts, conduct and other wrongs alleged in this Complaint, FareHarbor, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails and interstate telephone communications.

9.     The Subscription Agreement between Plaintiff and FareHarbor contains a provision, Section 5.e, entitled "Jurisdiction" that provides as follows:

> **Jurisdiction**. The Investor hereby agrees to submit to personal jurisdiction in the State of Colorado in any action or proceeding arising out of this Subscription Agreement and, in furtherance of such agreement, agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction of the Investor in any such action or proceeding may be obtained within or without the jurisdiction of any court located in Denver, Colorado and that any process or

CIVIL COMPLAINT FOR DAMAGES

notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the Investor by registered mail to or by personal service at the last known address of Investor, whether such address be within or without the jurisdiction of any such court.

10.    The foregoing Jurisdiction provision was understood and intended by Plaintiff to apply solely to the subject of personal jurisdiction over Plaintiff and was not intended or understood by Plaintiff to be a forum selection clause.  The Jurisdiction provision makes no reference to the venue in which actions arising out of the Subscription Agreement may be filed. Instead, the Jurisdiction provision was merely intended to avoid disputes regarding personal jurisdiction in the event that litigation was filed in Colorado. Nothing in the provision was intended to or does prohibit litigation arising out of the Subscription Agreement, including this action, from being filed or proceeding in this venue or any other venue. Plaintiff did not intend by affirmatively consenting to jurisdiction in Colorado to negatively exclude any other proper jurisdiction.  There are no mandatory provisions in the Jurisdiction provision and nothing in the Jurisdiction provision was intended to make Colorado the exclusive venue or jurisdiction for actions arising out

of the Subscription Agreement. Plaintiff would not have agreed to the Jurisdiction provision if it was intended to or did require that any action arising out of the Subscription Agreement be filed or venued in Colorado or that Colorado be the exclusive jurisdiction for such actions.

## IV.

## FACTS GIVING RISE TO THE COMPLAINT

### A.    FareHarbor Solicits Plaintiff's Investment.

11.    FareHarbor is a local activities and experiences booking software provider.

12.    In late 2016, FareHarbor was in need of capital to hire additional employees and to otherwise expand its business.

13.    In or around December 2016, FareHarbor approached Plaintiff about making an investment in FareHarbor.  In several meetings that occurred between December 5 and December 23, 2016 with representatives of Plaintiff, FareHarbor, through its officers Lawrence Hester, Zachary Hester and Max Valverde, represented to Plaintiff that the Company had existing preferred investors who had contributed a total of $3 million in capital to the Company and that FareHarbor was seeking an investment of $5

million from Plaintiff in exchange for preferred shares in FareHarbor.

### **B. To Induce Plaintiff to Purchase Its Series B Preferred Stock, FareHarbor Falsely Represents that It Has Provided All Material Information About the Company's Capitalization to Plaintiff and Conceals Material Information Regarding Its Outstanding Warrants.**

14.   Prior to investing in FareHarbor, Plaintiff requested certain information from FareHarbor to assist it in deciding whether to acquire preferred stock in the Company.   This requested information included information about the capitalization of the Company.   Specifically, in December 2016 Roy Pfund, a member of Plaintiff, requested both orally in and in writing all material information about the capital structure of FareHarbor, including but not limited to the various percentages of common and preferred securities held in the Company.   Mr. Pfund made several requests for this information, including but not limited to oral requests to Max Valverde, the Chief Commercial Officer of FareHarbor, in December 2016 and by email dated January 4, 2017.

15.   In response to Plaintiff's requests for information about FareHarbor's capitalization, Mr. Valverde disclosed in a December

2016 meeting with members of Plaintiff, including Mr. Pfund, that FareHarbor had received approximately $3 million in capital from FareHarbor's founders and their friends and family and that such investors held Series A preferred shares in the Company.  Neither Mr. Valverde nor anyone else from FareHarbor disclosed that any other person held any preferred securities in FareHarbor.

16.    Based    on    the    Company's    disclosures    about    the capitalization of the Company, including the disclosures made by Mr. Valverde about the absence of any other preferred security holders other than the Series A shareholders, Plaintiff was prepared to invest in the Company.

17.    In connection with Plaintiff's anticipated investment in the Company, FareHarbor adopted in or around December 2016 a Second Amended and Restated Certificate of Incorporation (the "Certificate of Incorporation") in which it authorized the issuance of 1,600,000 shares of Series B Preferred Shares to be sold to Plaintiff. Prior to the adoption of FareHarbor's Certificate of Incorporation, FareHarbor had not authorized or issued any Series B Preferred Shares.

18.   FareHarbor's Certificate of Incorporation set forth the liquidation and other rights of holders of the Series B Preferred Shares.   The Series B were "participating preferred" shares that entitled their holder to (1) a preference upon liquidation of FareHarbor in an amount equal to the holder's purchase price for the stock (plus any declared but unpaid dividends); and (2) the right to receive ratably with the holders of FareHarbor's common and Series A preferred shares the proceeds remaining after payment of the liquidation preferences to the Series B and Series A shareholders (collectively, the "Series B Liquidation Proceeds"). Pursuant to the Certificate of Incorporation, the Series B shareholders were entitled to receive the Series B Liquidation Proceeds upon any Liquidation Event, as that term is defined in the Certificate of Incorporation.

19.   On January 5, 2017, Plaintiff executed the written Subscription Agreement pursuant to which Plaintiff agreed to purchase essentially all (1,594,652 shares) of the authorized shares of FareHarbor's Series B Preferred Stock at a price of $3.1354 per share for a total purchase price of four million nine hundred and ninety-nine thousand nine hundred and ninety-nine dollars and

forty-six cents ($4,999,999.46).   Because Plaintiff was acquiring essentially all of FareHarbor's authorized Series B Preferred Shares, Plaintiff had no reason to believe any other person had any existing rights to FareHarbor's Series B Preferred shares.   FareHarbor did not disclose to Plaintiff at any time prior to its sale of the Series B Preferred shares to Plaintiff that any other person had any existing rights to or in FareHarbor's Series B Preferred shares.   FareHarbor also sought safe harbor for its securities offering to Plaintiff under the Rule 506(b) exemption.   However, FareHarbor failed to file a proper Form D for such an offering and instead filed a Form D in which it listed the total offering amount as $750,000.

20.   In the Subscription Agreement, FareHarbor made express representations and warranties about the information disclosed by it to Plaintiff.   Among other representations, FareHarbor expressly represented and warranted in Section 4.e that it had made available to Plaintiff all information reasonably available to FareHarbor that Plaintiff had requested to assist it in deciding whether to invest, which included the capitalization information Plaintiff requested from Mr. Valverde.

CIVIL COMPLAINT FOR DAMAGES

21.   In many securities purchase agreements, the seller requires the buyer to agree to a "reliance disclaimer" - a provision in which the buyer acknowledges that, in making its investment, the buyer is not relying on any information that is not contained within the purchase agreement itself.   The Subscription Agreement executed by Plaintiff for its Series B Preferred shares contained no such anti-reliance provision.

## C.   **Booking Acquires FareHarbor and Plaintiff Discovers The Truth About FareHarbor's Capitalization**

22.   A little more than a year after Plaintiff invested in FareHarbor, FareHarbor entered into an Agreement and Plan of Merger with Booking on or around April 17, 2018 (the "Merger Agreement") pursuant to which Booking agreed to acquire FareHarbor (the "Booking Acquisition").   The Booking Acquisition constituted a Liquidation Event under FareHarbor's Certificate of Incorporation and triggered Plaintiff's right to be paid the Series B Liquidation Proceeds. Pursuant to the Merger Agreement, each FareHarbor share of stock, including Plaintiff's Series B Preferred Stock, was to be canceled and converted into a right to receive cash. The amount of cash each shareholder was entitled to receive

depended upon the number and type of shares held by the shareholder.  Plaintiff is informed and believes that the Booking Acquisition closed in or around May 2018.

23.  In connection with the Booking Acquisition, FareHarbor and Booking provided Plaintiff with a copy of the Merger Agreement that disclosed that, prior to Plaintiff's investment in FareHarbor, FareHarbor had issued certain warrants identified in the Merger Agreement as the "Costella Warrants".  The Merger Agreement also disclosed that, prior to Plaintiff's investment, FareHarbor had issued warrants identified in the Merger Agreement as the "Series A-2 Preferred Warrants". The Merger Agreement suggests that the aggregate warrant exercise price for the Costella Warrants and Series A-2 Preferred Warrants was $124,791.01.   The Merger Agreement further suggests that the Costella Warrants contained several unique terms that gave the Costella Warrant holders rights to FareHarbor's Series B Preferred shares and affected Plaintiff's rights under its Series B Preferred shares.  According to the Merger Agreement, the Costella Warrants entitled their holders to convert the warrants into the right to receive an amount in cash equal to that amount that they would have received from the merger

CIVIL COMPLAINT FOR DAMAGES

proceeds had they owned Series B Preferred shares equal to 3.5% of all outstanding common and preferred stock in the Company. Because of an anti-dilution feature of the Costella Warrants and their exercisability into Series B Preferred Stock, which was participating preferred stock, the effect of the Costella Warrants was (1) to dilute Plaintiff's percentage ownership interest in FareHarbor; and (2) reduce the amount available for distribution to Plaintiff from the liquidation proceeds by diverting substantial amounts to the holder(s) of the Costella Warrants. Based on information provided by FareHarbor, Plaintiff is informed and believes that the Costella Warrants entitled their holders to more than 2,300,000 shares of Series B Preferred shares. The effect of the Costella Warrants was to divert more than $7 million of liquidation proceeds from the Booking Acquisition that otherwise would have been available for distribution to Plaintiff and FareHarbor's other shareholders. The effect of the Series A-2 Preferred Warrants also was to divert proceeds from the Booking Acquisition that otherwise would have been available for distribution to Plaintiff and FareHarbor's other shareholders. The aggregate warrant exercise price disclosed in the Merger Agreement ($124,791.01) suggests that holders of the

CIVIL COMPLAINT FOR DAMAGES

Costella Warrants and Series A-2 Preferred Warrants paid an effective share price for their Preferred Shares of less than $0.05 per share.

24.    The Costella Warrants and their terms and the Series A-2 Preferred Warrants and their terms fall squarely within the category of information regarding capitalization of the Company that Plaintiff requested from FareHarbor for deciding whether to acquire the Series B Preferred Stock. The terms of the Costella Warrants and the Series A-2 Preferred Warrants were material to Plaintiff's purchase of the Company's Series B stock because they affected the value of the Series B stock and the rights of its holders, including the amounts Plaintiff was entitled to receive on a Liquidation Event of FareHarbor.    Despite FareHarbor's representations and warranties to the contrary, FareHarbor failed to make available and instead deliberately concealed the Costella Warrants and Series A-2 Preferred Warrants and their terms from Plaintiff prior to its investment.

25.    Plaintiff would not have invested in FareHarbor on the terms it invested had it known of the terms of the Costella Warrants and Series A-2 Preferred Warrants.    Among other things, Plaintiff

CIVIL COMPLAINT FOR DAMAGES

would have insisted on receiving the same or better terms than the Costella Warrants and Series A-2 Preferred Warrants, including a comparable price per share and anti-dilution protection.

26.   After Plaintiff acquired its shares, the Company issued additional shares of its stock, including to employees as incentive compensation.   Such issuance had the effect of diluting Plaintiff's stake in the Company.   In contrast, holders of the Costella Warrants were not subject to dilution – the undisclosed terms of their warrants entitled them to receive the number of shares equal to 3.5% of all outstanding common and preferred shares in the Company at the time of the Booking Acquisition.

27.   FareHarbor knew that disclosure of the Costella Warrants and the Series A-2 Preferred Warrants and their terms to Plaintiff would have jeopardized Plaintiff's investment in the Company and that, had FareHarbor disclosed such information, Plaintiff would not have invested on the terms in the Subscription Agreement.   Among other things, Plaintiff would have conditioned its investment in FareHarbor on receiving the same or better terms as those in the Costella Warrants and Series A-2 Preferred Warrants, including a comparable price per share and provisions to

CIVIL COMPLAINT FOR DAMAGES

prevent the warrants from diluting Plaintiff's interest in the Company or diminishing its liquidation rights.

28.  After learning of the Costella Warrants and Series A-2 Preferred Warrants and their terms, Plaintiff repeatedly demanded from FareHarbor and Booking, among other documents, copies of the warrants, the minutes of the FareHarbor board meeting approving the warrants and the "Merger Consideration Spreadsheet" referenced in Section 2.7 of Merger Agreement that FareHarbor provided to Booking showing the amount that Plaintiff, the holders of the Costella Warrants and all other FareHarbor shareholders are entitled to receive from the Booking Acquisition. FareHarbor and Booking refused Plaintiff's requests for such documents.

29.  FareHarbor and Booking have notified Plaintiff that as a result of the Booking Acquisition, Plaintiff is entitled to cash consideration in excess of $10,000,000 for its Series B shares. Plaintiff disputes this amount and contends that it is entitled to more than the amount identified by FareHarbor and Booking.

30.  The Series B Liquidation Proceeds are now due and owing to Plaintiff.  Nevertheless, FareHarbor has wrongfully failed

and refused to pay to Plaintiff its Series B Liquidation Proceeds and has failed to pay any of the more than $10 million amount that FareHarbor admits that it owes to Plaintiff for its Series B shares. FareHarbor has wrongly conditioned any payment to Plaintiff of the Series B Liquidation Proceeds on Plaintiff's execution of an agreement releasing all claims it has against FareHarbor and Booking, including the claims that are the subject of this action.

31.   Although FareHarbor has not made any payment to Plaintiff for its Series B shares, FareHarbor simultaneously contends that Plaintiff is no longer a shareholder in FareHarbor and has relied on such alleged status to deny Plaintiff the information to which Plaintiff would be entitled as a shareholder under Delaware law, including but not limited to board minutes and the financial records of the Company.   Plaintiff is informed that FareHarbor has failed and refused to provide such information to prevent discovery of additional evidence of its misconduct.

CIVIL COMPLAINT FOR DAMAGES

## V.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**(Violation of Section 10(b) of the Exchange Act
and Rule 10b-5 Promulgated Thereunder)**

32.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 31, as though fully set forth herein.

33.   FareHarbor engaged in a scheme and carried out a plan to deceive Plaintiff into investing in the Company on terms that were not fair to Plaintiff.   FareHarbor expressly represented to Plaintiff that FareHarbor had disclosed or made available to Plaintiff all information reasonably available to FareHarbor that Plaintiff had requested to assist it in deciding whether to invest, which included the capitalization information Plaintiff requested from Mr. Valverde. FareHarbor's representation was false.   FareHarbor had not disclosed all material information relating to the Company's capitalization, including the Costella Warrants and Series A-2 Preferred Warrants and their terms. When FareHarbor made this representation, the Company knew it to be false, and made the representation with the specific intent to defraud and deceive

CIVIL COMPLAINT FOR DAMAGES

Plaintiff and with the intent to induce Plaintiff to purchase FareHarbor's Series B shares.

34.   At the time that Plaintiff agreed to purchase the Series B shares on the terms set for the in the Subscription Agreement and the Certificate of Incorporation, Plaintiff was ignorant of FareHarbor's misrepresentations regarding the capitalization of the Company and its concealment of the Costella Warrants and the Series A-2 Preferred Warrants and their terms.  Had Plaintiff known the true facts about FareHarbor's capitalization and the Costella Warrants and the Series A-2 Preferred Warrants and their terms, Plaintiff would not have purchased the Series B shares on the terms it did.

35.   By virtue of the foregoing, FareHarbor has violated Section 10(b) of the Exchange Act and Rule 10(b)(5) promulgated thereunder.

36.   As a direct and proximate result of FareHarbor's wrongful conduct, Plaintiff has been damaged in an amount to be determined at trial but in excess of $10 million.

## SECOND CAUSE OF ACTION
### (Fraud)

37.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 36, as though fully set forth herein.

38.   As set forth more fully above, FareHarbor expressly represented to Plaintiff that FareHarbor had disclosed or made available to Plaintiff all information reasonably available to FareHarbor that Plaintiff had requested to assist it in deciding whether to invest, which included the capitalization information Plaintiff requested from Mr. Valverde.  FareHarbor's representations were false.  FareHarbor had not disclosed all material information relating to the Company's capitalization, including the Costella Warrants and the Series A-2 Preferred Warrants and their terms. When FareHarbor made these representations, the Company knew them to be false, and made the representations with the specific intent to defraud and deceive Plaintiff and with the intent to induce Plaintiff to purchase FareHarbor's Series B shares.

39.   At the time that Plaintiff agreed to purchase the Series B shares on the terms set forth in the Subscription Agreement and the Certificate of Incorporation, Plaintiff was ignorant of

CIVIL COMPLAINT FOR DAMAGES

FareHarbor's misrepresentations regarding the capitalization of the Company and its concealment of the Costella Warrants and the Series A-2 Preferred Warrants and their terms.  Had Plaintiff known the true facts about FareHarbor's capitalization and the Costella Warrants and the Series A-2 Preferred Warrants and their terms, Plaintiff would not have purchased the Series B shares on the terms it did.

40.   When FareHarbor concealed the true facts about FareHarbor's capitalization and the Costella Warrant terms and the Series A-2 Preferred Warrant terms from Plaintiff and represented to Plaintiff that it had disclosed or made available to Plaintiff all information reasonably available to FareHarbor that Plaintiff had requested to assist it in deciding whether to invest, FareHarbor knew that its representations were false and knew that it had concealed material information from Plaintiff.  The Company made the representations and concealed the true facts about FareHarbor's capitalization and the Costella Warrant terms and the Series A-2 Preferred Warrant terms with the intent to deceive Plaintiff and to induce Plaintiff to act in reliance on these misrepresentations and omissions.

CIVIL COMPLAINT FOR DAMAGES

41.   At the time FareHarbor made the misrepresentations and omissions to Plaintiff, Plaintiff was unaware of the falsity of FareHarbor's statements and believed them to be true.  Plaintiff, in fact, reasonably relied on the truth of the representations when it entered into the Subscription Agreement.  Had Plaintiff known the true facts, it would not have entered into the Subscription Agreement on the terms therein.

42. As a proximate result of FareHarbor's material misrepresentations and omissions, Plaintiff has suffered damages in an amount subject to proof, but in any event, in excess of $10,000,000.

43.   FareHarbor's aforementioned conduct was an intentional misrepresentation, deceit or concealment of material facts known to FareHarbor with the intention of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of the rights of Plaintiff.  In concealing the Costella Warrants and the Series A-2 Preferred Warrants and their terms from Plaintiff, FareHarbor acted wantonly

and with gross, malicious and oppressive fraud such that Plaintiff is entitled to an award of exemplary damages or punitive damages.

### THIRD CAUSE OF ACTION
### (Breach of Subscription Agreement
### and Certificate of Incorporation)

44.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 43, as though fully set forth herein.

45.  Plaintiff has performed all obligations required of it under the Subscription Agreement.

46.  FareHarbor has breached the representations and warranties in the Subscription Agreement by failing to make available or otherwise disclosing to Plaintiff all information reasonably available to FareHarbor, including the Costella Warrants and the Series A-2 Preferred Warrants and their terms, that Plaintiff requested to assist it in deciding whether to invest.

47.  The Booking Acquisition constituted a Liquidation Event under FareHarbor's Certificate of Incorporation and triggered Plaintiff's right to be paid the Series B Liquidation Proceeds. FareHarbor has breached the Subscription Agreement and its Certificate of Incorporation by failing and refusing to pay Plaintiff the Series B Liquidation Proceeds to which Plaintiff is entitled.

48.   Based on the Booking Acquisition and the related cancelation of all outstanding shares of FareHarbor stock, including Plaintiff's Series B Preferred shares, Plaintiff is owed in excess of $10,000,000 by FareHarbor.  FareHarbor has failed and refused to pay Plaintiff any amount for its Series B Preferred shares absent Plaintiff's execution of a release of claims against FareHarbor and Booking.

49.   As a direct and proximate result of FareHarbor's breaches of the Subscription Agreement and its Certificate of Incorporation, Plaintiff has been damaged in an amount to be determined at trial but in excess of $10 million.

### FOURTH CAUSE OF ACTION
### (Violations of Haw. Rev. Stat. Sections 485A-501 and 485A-509 of the Hawaii Uniform Securities Act)

50.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 49, as though fully set forth herein.

51.   As more fully described above, FareHarbor committed fraud against Plaintiff, violated Haw. Rev. Stat. section 485A-501, and therefore is liable to Plaintiff under Haw. Rev. Stat. section 485A-509 because it expressly represented to Plaintiff that it disclosed and/or made available to Plaintiff all information

CIVIL COMPLAINT FOR DAMAGES

reasonably available to FareHarbor (included the capitalization information Plaintiff requested from Mr. Valverde) that Plaintiff requested to assist it in deciding whether to invest in the Company. FareHarbor's representations to Plaintiff were false. FareHarbor did not disclose all material information relating to the Company's capitalization, including the Costella Warrants and the Series A-2 Preferred Warrants and their terms. When FareHarbor made these representations, the Company knew it was making untrue statements and made its representations with the specific intent to defraud, deceive, and induce Plaintiff to purchase FareHarbor's Series B shares.

52. At the time that Plaintiff agreed to purchase the Series B shares on the terms set for the in the Subscription Agreement and the Certificate of Incorporation, Plaintiff was unaware of FareHarbor's misrepresentations. Had Plaintiff known the true facts about FareHarbor's capitalization and the Costella Warrants and the Series A-2 Preferred Warrants and their terms, Plaintiff would not have purchased the Series B shares on the terms it did.

53. When FareHarbor hid the true facts about FareHarbor's capitalization and the Costella Warrant terms and the Series A-2

26        CIVIL COMPLAINT FOR DAMAGES

Preferred Warrant terms from Plaintiff and represented to Plaintiff that it had disclosed or made available to Plaintiff all information reasonably available to FareHarbor that Plaintiff requested to facilitate its decision to invest, FareHarbor knew that its representations were untrue and that it further concealed material information from Plaintiff. FareHarbor made its false statements to Plaintiff and concealed information with the intent to deceive Plaintiff and to induce Plaintiff to act in reliance on these misrepresentations and omissions.

54.   At the time FareHarbor made the misrepresentations and omissions to Plaintiff, Plaintiff was unaware of the falsity of FareHarbor's statements and believed them to be true.  Plaintiff, in fact, reasonably relied on the truth of the representations when it entered into the Subscription Agreement.  Had Plaintiff known the true facts, it would not have entered into the Subscription Agreement on the terms therein.

55. As a proximate result of FareHarbor's material misrepresentations and omissions and pursuant to Haw. Rev. Stat. section 485A-509, Plaintiff is entitled to recover, among other things, the net consideration paid for the security, interest at the

legal rate of interest from the date of purchase, costs and reasonable attorney's fees determined by the court, or actual damages suffered in an amount subject to proof, but in any event, in excess of $10,000,000.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the entry of judgment against Defendant as follows:

1.     For damages for the proximate and foreseeable loss resulting from Defendant's fraud and breach of contract, in an amount to be proven at trial, including interest thereon, but no less than $10,000,000;

2.     For exemplary and punitive damages;

3.     That Plaintiff be awarded its reasonable attorneys' fees and costs of litigation as allowed by law; and

//

//

4.    That this Court provide such other and further relief as may be just and proper.

DATED: Honolulu, Hawaiʻi, September 14, 2018.

/s/ Margery S. Bronster
MARGERY S. BRONSTER
REX Y. FUJICHAKU
ANTHONY "T.J." QUAN
CHRISTOPHER L. WANGER
(*Pro Hac Vice* pending)
ANA GUARDADO
(*Pro Hac Vice* pending)

Attorneys for Plaintiff
RSMCFH, LLC