IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RSMCFH, LLC, a Hawaii limited liability company, | CIVIL 18-00348 LEK-RLP |
| Plaintiff, | |
| vs. | |
| FAREHARBOR HOLDINGS, INC., a Delaware corporation, | |
| Defendant. | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Before the Court is Defendant FareHarbor Holdings, Inc.'s ("Defendant") Motion to Dismiss Pursuant to Rule 12(b)(6) ("Motion"), filed on November 16, 2018.[1] [Dkt. no. 20.] Plaintiff RSMCFH, LLC ("Plaintiff") filed its memorandum in opposition on December 14, 2018, and Defendant filed its reply on December 21, 2018. [Dkt. nos. 23, 24.] This matter came on for hearing on January 7, 2019. Defendant's Motion is hereby granted in part and denied in part for the reasons set forth below.

**BACKGROUND**

This action for securities violations arises out of Plaintiff's multi-million dollar investment in Defendant, which "is a local activities and experiences booking software

---

[1] Defendant points out that "FareHarbor Holdings, Inc." has not existed since the April 2018 merger discussed *infra*. The surviving entity is FareHarbor Holdings LLC. [Mem. in Supp. of Motion at 1 n.1.]

provider." [Dkt. no. 1 (complaint filed September 14, 2018 ("Complaint")) at ¶ 11.] In December 2016, Defendant's representative approached Plaintiff about investing in Defendant and meetings took place several times from December 5 to 23, 2016. During these meetings, Defendant's officers – Lawrence Hester, Zachary Hester, and Max Valverde – represented that Defendant's existing preferred investors had already invested $3 million, and Defendant was seeking a $5 million investment from Plaintiff, in exchange for preferred stock. [Id. at ¶ 13.]

Before making the investment, Plaintiff asked for certain information, including information about Defendant's capitalization. [Id. at ¶ 14.] Plaintiff specifically requested "all material information about the capital structure of [Defendant], including but not limited to the various percentages of common and preferred securities held in the Company." [Id.] Roy Pfund, one of Plaintiff's members, made several requests for this information, including a December 2016 oral request to Mr. Valverde, Defendant's Chief Commercial Officer, and a January 4, 2017 email request. [Id.] In response, Mr. Valverde disclosed the $3 million invested by those who held Defendant's Series A preferred shares. No other preferred securities were disclosed. [Id. at ¶ 15.] Based on these representations, Plaintiff was prepared to invest in Defendant. [Id. at ¶ 16.]

In anticipation of Plaintiff's investment, Defendant adopted a Second Amended and Restated Certificate of Incorporation, authorizing the issuance of 1,600,000 shares of Series B Preferred Shares ("Certificate of Incorporation"). [Id. at ¶ 17.] This was the first time Defendant issued Series B Preferred Shares. [Id.] On January 5, 2017, Plaintiff executed a Subscription Agreement, agreeing to purchase 1,594,652 of the Series B Preferred Shares at $3.1354 per share, for a total of $4,999,999.46. [Id. at ¶ 19.] Plaintiff alleges it had no reason to believe Defendant had any other Series B Preferred Shareholders or that any other person had similar rights. Defendant represented in the Subscription Agreement that it had given Plaintiff access to all information that was both reasonably available to Defendant and responsive to Plaintiff's request for information. Plaintiff argues that, based on Defendant's representations, it believed Defendant had disclosed all relevant capitalization information. [Id. at ¶¶ 19-20.]

On April 17, 2018, Defendant entered into an Agreement and Plan of Merger ("Merger Agreement") in which Booking Holdings Inc. ("Booking") agreed to purchase Plaintiff ("Booking Acquisition"), and the merger closed in May 2018. Plaintiff argues the Booking Acquisition was a "Liquidation Event" under the Certificate of Incorporation, which triggered Plaintiff's right to be paid "Liquidation Proceeds." [Id. at ¶ 22.] The

3

Merger Agreement provided that all shares of stock in Defendant, including Plaintiff's, would be cancelled and converted into a right to a cash payment, the amount of which depended on the number and type of shares held. [Id.]

Plaintiff received a copy of the Merger Agreement, which stated that, on a date before Plaintiff made its investment, Defendant issued: one group of warrants that the Merger Agreement referred to as the "Costella Warrants"; and another group referred to as the "Series A-2 Preferred Warrants" ("A-2 Warrants" and collectively "Warrants"). The Warrants were sold for an aggregate total of $124,791.01. [Id. at ¶ 23.] According to Plaintiff, "the effect of the Costella Warrants was (1) to dilute Plaintiff's percentage ownership interest in [Defendant]; and (2) reduce the amount available for distribution to Plaintiff from the liquidation proceeds by diverting substantial amounts to the holder(s) of the Costella Warrants." [Id.] Plaintiff asserts that, but for the Costella Warrants, more than $7 million of additional liquidation proceeds from the Booking Acquisition would have been available to Plaintiff and Defendant's other shareholders. [Id.] Plaintiff also alleges the A-2 Warrants diverted more proceeds of the Booking Acquisition away from Plaintiff and Defendant's other shareholders. Plaintiff alleges the holders of the Warrants

effectively paid less than $0.05 per share for their investments in Defendant. [Id.]

Plaintiff asserts the Warrants and their terms should have been disclosed to Plaintiff in response to Plaintiff's pre-investment requests for information about Defendant's capitalization. According to Plaintiff, Defendant did not make this information available to Plaintiff, and Defendant deliberately concealed them from Plaintiff before Plaintiff's investment. [Id. at ¶ 24.]

Once Plaintiff learned about the Warrants, it made repeated demands to Defendant and Booking for documents regarding the merger and the Warrants, but these requests were refused. [Id. at ¶ 28.] The Series B Liquidation Proceeds are now due and owing to Plaintiff. [Id. at ¶ 30.] Defendant and Booking have informed Plaintiff that it is entitled to receive more than $10 million for its shares, but Plaintiff contends that amount is insufficient. [Id. at ¶ 29.]

The Complaint alleges the following claims: Defendant's misrepresentations regarding its capitalization and its concealment of the Warrants and their terms violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Count I"); fraud ("Count II"); a claim that Defendant breached the Subscription Agreement and the Certificate of Incorporation ("Count III"); and

violation of the Hawai`i Uniform Securities Act, Haw. Rev. Stat. §§ 485A-501 and 485A-509 ("Count IV").

Defendant now urges dismissal of Plaintiff's claims in the Complaint and asserts the dismissal should be with prejudice.

**DISCUSSION**

I. **Consideration of Materials Beyond the Pleadings**

Defendant submitted two exhibits in support of the Motion: a series of emails between Mr. Valverde, Mr. Pfund, and others from December 19, 2016 to January 5, 2017; [Motion, Decl. of Laura A. Kelly in Supp. of Motion ("Kelly Decl."), Exh. A;] and the Subscription Agreement, [id., Exh. B].  As a general rule, this Court's scope of review in considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss is limited to the allegations in the complaint.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018), *cert. petition docketed*, No. 18-1010 (Feb. 4, 2019).  If the district court considers materials beyond the pleadings, "the 12(b)(6) motion converts into a motion for summary judgment under [Fed. R. Civ. P.] 56," and "both parties must have the opportunity 'to present all the material that is pertinent to the motion.'"  Id. (quoting Fed. R. Civ. P. 12(d)).  However, a district court can consider materials beyond the pleadings without converting the motion to dismiss into a motion for summary judgment if either the incorporation by

6

reference doctrine or Fed. R. Evid. 201 judicial notice applies. Id.

Defendant argues both the emails and the Subscription Agreement have been incorporated by reference into the Complaint.

> [I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in* Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 681-82 (9th Cir. 2006) (observing "the policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").
>
> Although the doctrine is straightforward in its purpose, it is not always easy to apply. In Ritchie, we said that a defendant may seek to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." [United States v.] Ritchie, 342 F.3d [903,] 907 [(9th Cir. 2003)]. How "extensively" must the complaint refer to the document? This court has held that "the mere mention of the existence of a document is insufficient to incorporate the contents of a document" under Ritchie. Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing Ritchie, 342 F.3d at 908-09). . . .

Id. at 1002. Plaintiff does not dispute Defendant's position that Exhibit B – the Subscription Agreement – is incorporated by reference in the Complaint. See Mem. in Opp. at 28 n.5. This Court concludes that the Subscription Agreement is incorporated

7

by reference into the Complaint because it is both referred to extensively in the Complaint and it forms the basis for Plaintiff's claims. See, e.g., Complaint at ¶ 41; id. at ¶¶ 44-49. The Subscription Agreement will therefore be considered in ruling on the Motion without converting the Motion into a motion for summary judgment.

As to the emails, however, there is only a passing reference in the Complaint. The only reference made is to an email that **may** be one of the emails contained in Exhibit A. See Complaint at ¶ 14 (noting that Mr. Pfund made oral requests for information to Mr. Valverde and Mr. Pfund made a written request in a January 4, 2017 email);[2] Kelly Decl., Exh. A at 2 (1/4/17 email to Mr. Valverde from Mr. Pfund). This email and the other emails in Exhibit A are not extensively referenced. More importantly, the email correspondence contained in Exhibit A is not the basis of Plaintiff's claims; it is the basis of the defense that Defendant disclosed the Warrants to Plaintiff before Plaintiff's investment. See Khoja, 899 F.3d at 1002 ("if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint"). Exhibit A is not incorporated by

---

[2] It is not clear whether only the oral requests or both the oral requests and the January 4, 2017 email were directed to Mr. Valerde. [Complaint at ¶ 14.]

reference in the Complaint, and will not be considered in ruling on the Motion.

**II.  Federal Securities Claim**

Count I alleges Defendant violated § 10(b) of the Securities Exchange Act and Rule 10b-5.  Section 10(b) states, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange–
>
> . . . .
>
> (b)  To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j (footnote omitted).  Rule 10b-5 has similar language.  See 17 C.F.R. § 240.10b-5.  The Ninth Circuit has stated:

> Five elements are required in order to prove a primary violation of Rule 10b-5.  In particular, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." [In re] Daou [Sys., Inc.], 411 F.3d [1006,] 1014 [(9th Cir. 2005)].  At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b-5

must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act of 1995 ("PSLRA")].

Federal Rule of Civil Procedure 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This requirement has long been applied to securities fraud complaints. See Semegen v. Weidner, 780 F.2d 727, 729, 734-35 (9th Cir. 1985). Accordingly, before 1995 we required "falsity" to be pled with particularity, and "scienter" to be alleged generally. See Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

All securities fraud complaints since 1995, however, are subject to the more exacting pleading requirements of the PSLRA, which "significantly altered pleading requirements" in securities fraud cases. Gompper [v. VISX, Inc.], 298 F.3d [893,] 895 [(9th Cir. 2002)] (quotation marks omitted). The PSLRA amended the Securities Exchange Act to require that a complaint "plead with particularity both falsity and scienter." Id. (quoting Ronconi, 253 F.3d at 429). Thus, to properly allege falsity, a securities fraud complaint must now "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." Id. (quoting 15 U.S.C. § 78u-4(b)(1)) (quotation marks omitted). To adequately plead scienter, the complaint must now "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). See also Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976).

Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990-91 (9th Cir. 2009) (some alterations in Zucco Partners).

As to the Rule 10b-5 elements, Plaintiff has failed to allege sufficient allegations to plead scienter. Count I alleges:

> FareHarbor engaged in a scheme and carried out a plan to deceive Plaintiff into investing in the Company on terms that were not fair to Plaintiff. FareHarbor expressly represented to Plaintiff that FareHarbor had disclosed or made available to Plaintiff all information reasonably available to FareHarbor that Plaintiff had requested to assist it in deciding whether to invest, which included the capitalization information Plaintiff requested from Mr. Valverde. FareHarbor's representation was false. FareHarbor had not disclosed all material information relating to the Company's capitalization, including the Costella Warrants and Series A-2 Preferred Warrants and their terms. When FareHarbor made this representation, the Company knew it to be false, and **made the representation with the specific intent to defraud and deceive Plaintiff and with the intent to induce Plaintiff to purchase FareHarbor's Series B shares**.

[Complaint at ¶ 33 (emphasis added).] The Complaint also alleges Defendant knew that, if it disclosed information about the Warrants to Plaintiff, Plaintiff would not have agreed to the terms contained in the Subscription Agreement. [Id. at ¶ 27.]

Plaintiff's scienter allegations must be viewed in the context of both the Complaint as a whole and the Subscription Agreement, and this Court "must determine whether 'all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" See Zucco Partners, 552 F.3d at 991 (emphasis omitted) (quoting Tellabs,

Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2510 (2007)).

> [W]hen "determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." [Tellabs, 127 S. Ct. at 2509.] This "inquiry is inherently comparative." Id. at 2510. A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference. See id. at 2510. See also Metzler Investment [GMBH v. Corinthian Colls., Inc.], 540 F.3d [1049,] 1066 [(9th Cir. 2008)].
>
> To adequately demonstrate that the "defendant acted with the required state of mind," a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." Daou, 411 F.3d at 1014-15 (citing [In re] Silicon Graphics [Inc. Sec. Litig.], 183 F.3d [970,] 974 [(9th Cir. 1999)]).[3] In Silicon Graphics, we defined the "deliberate recklessness" standard, noting that "we continue[] to view it as a form of intentional or knowing misconduct." 183 F.3d at 976. More specifically, "although facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness." Id. at 974. Rather, **the plaintiff must plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it**." Id.

---

[3] Silicon Graphics has been superseded by statute on other grounds, as recognized in In re Quality Systems, Inc. Securities Litigation, 865 F.3d 1130, 1146 (9th Cir. 2017).

>at 976 (quoting Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990); Sundstrand Corp. v. Sun Chem. Corp., 553 F.2d 1033, 1045 (7th Cir. 1977)) (quotation marks omitted).

Id. (some alterations in Zucco Partners) (emphasis added). Plaintiff's scienter allegations do not meet this standard.

In addition, Count I does not meet the heightened Rule 9(b) pleading standard. Siruno v. Deutsche Bank Nat'l Tr. Co., CIVIL NO. 17-00447 SOM/KJM, 2018 WL 2090606, at *10 (D. Hawai`i May 4, 2018) (allegations of fraud must be specific). Plaintiff alleges:

> In response to Plaintiff's requests for information about FareHarbor's capitalization, Mr. Valverde disclosed in a December 2016 meeting with members of Plaintiff, including Mr. Pfund, that FareHarbor had received approximately $3 million in capital from FareHarbor's founders and their friends and family and that such investors held Series A preferred shares in the Company. Neither Mr. Valverde nor anyone else from FareHarbor disclosed that any other person held any preferred securities in FareHarbor.

[Complaint at ¶ 15.] However, Plaintiff does not specify what presumably fraudulent responses were received in response to its requests for information. Count I thus fails to meet the heightened Rule 9(b) pleading standard because Plaintiff has not pled sufficient allegations regarding the "who, what, when, where, and how" of the alleged misrepresentations and omissions that Count I is based upon. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).

13

Because Plaintiff fails to sufficiently allege a required element of a § 10(b)/Rule 10b-5 claim, and because Plaintiff's allegations do not meet the Rule 9(b) heightened pleading standard, Count I must be dismissed. This dismissal is without prejudice because it is arguably possible for Plaintiff to cure the defects in Count I by amendment. See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." (brackets, citation, and internal quotation marks omitted)).

### III. **State Law Claims**

The Complaint alleges both: 1) federal question jurisdiction over Count I, with supplemental jurisdiction over Plaintiff's state law claims; [Complaint at ¶ 5 (citing 28 U.S.C. §§ 1331, 1367;] and 2) diversity jurisdiction, [id. at ¶ 6 (citing 28 U.S.C. § 1332)]. Defendant has not contested the existence of diversity jurisdiction, and therefore jurisdiction exists for Plaintiff's state law claims, even though its federal law claim has been dismissed. Hawai`i substantive law applies to Plaintiff's state law claims in either diversity or supplemental jurisdiction. See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011).

A. **Fraud**

Plaintiff asserts the conduct that forms the basis of Count I also supports a common law fraud claim. Under Hawai`i law, the elements of a fraud claim are: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." Shoppe v. Gucci Am., Inc., 94 Hawai`i 368, 386, 14 P.3d 1049, 1067 (2000). Fraud claims brought in federal court are subjected to the heightened pleading standard required under Rule 9(b). See, e.g., Siruno, 2018 WL 2090606, at *9-10 (applying Rule 9(b) analysis to fraud claims). As such, Plaintiff's fraud claim again fails to meet the Rule 9(b) heightened pleading standard since the same factual allegations as Count I are alleged.[4] Count II is therefore dismissed, but the dismissal is without prejudice because it is arguably possible for Plaintiff to cure the defects in Count II by amendment.

B. **Breach of Contract**

Count III alleges Defendant breached the Subscription Agreement and the Certificate of Incorporation by: 1) failing to

---

[4] The Court acknowledges that, unlike for Plaintiff's § 10(b)/Rule 10b-5 claim, Plaintiff's general allegations regarding Defendant's intent are sufficient for purposes of its fraud claim. See Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

15

disclose information about the Warrants and their terms; and 2) refusing to pay the Liquidation Proceeds owed to Plaintiff as a result of the Booking Acquisition. [Complaint at ¶¶ 44-49.] Under Hawai`i law, "[t]he elements of a breach of contract claim are '(1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract.'" Marine Lumber Co. v. Precision Moving & Storage Inc., CIVIL 16-00365 LEK-RLP, 2017 WL 1159093, at *6 (D. Hawai`i Mar. 28, 2017) (quoting Liberty Mut. Ins. Co. v. Sumo-Nan LLC, Civil No. 14-00520 DKW-KSC, 2015 WL 2449480, at *3 (D. Hawai`i May 20, 2015)).

Defendant argues Count III fails to state a claim because Plaintiff agreed in the Subscription Agreement that Defendant made all information reasonably available to Plaintiff that Plaintiff had requested in order to decide whether to invest. [Mem. in Supp. of Motion at 24-25 (citing Complaint at ¶¶ 14-15, 20, 24, 26; Kelly Decl., Exh. B at § 4(e)).] Defendants' argument is misplaced. Plaintiff's theory of the case is that Defendant improperly induced Plaintiff to make that acknowledgment by making material misrepresentations and omissions, thus the acknowledgment in the Subscription Agreement has no bearing on Plaintiff's breach of contract claim.

16

Defendant also argues Count III should be dismissed because Defendant disclosed the Warrants to Plaintiff. This argument is rejected because it is based upon Exhibit A to the Kelly Declaration, which this Court has declined to consider.

The Complaint pleads sufficient allegations to support a plausible breach of contract claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007))). The Motion is therefore denied as to Count III.

**C.  State Securities Claim**

Plaintiff asserts the conduct that forms the basis of Count I also constitutes a violation of the Hawai`i Uniform Securities Act. Haw. Rev. Stat. § 485A-501(a) states:

> It shall be unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:
>
> > (1)  To employ a device, scheme, or artifice to defraud; [or]
> >
> > (2)  To make an untrue statement of a material fact or to fail to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading[.]

The standards applicable to Plaintiff's § 10(b)/Rule 10b-5 claim also apply to Plaintiff's § 485A-501(a) claims. See Haw. Rev. Stat. § 485A-509(a) ("Enforcement of civil liability under this

17

section shall be subject to the Securities Litigation Uniform Standards Act of 1998 [('SLUSA')]."); <u>Northstar Fin. Advisors, Inc. v. Schwab Invs.</u>, 904 F.3d 821, 828 (9th Cir. 2018) ("SLUSA was enacted to stem the shift of class-action securities lawsuits from federal courts to state courts after passage of the Private Securities Litigation Reform Act of 1995." (citing <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit</u>, 547 U.S. 71, 82, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006))).  For the same reasons set forth as to Count I, Count IV is not sufficiently pled.  Count IV is therefore dismissed, but the dismissal is without prejudice because it is arguably possible for Plaintiff to cure the defects in Count IV by amendment.

## **CONCLUSION**

On the basis of the foregoing, Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6), filed November 16, 2018, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is GRANTED insofar as Counts I, II, and IV are HEREBY DISMISSED.  The Motion is DENIED insofar the dismissal of those claims is WITHOUT PREJUDICE, and the Motion is DENIED as to Count III.

Plaintiff is ORDERED to file its amended complaint by **March 28, 2019**.  Plaintiff is only granted leave to add new factual allegations to support the claims that this Court has dismissed without prejudice.  Plaintiff does not have leave to add any new parties, claims, or theories of liability.  If

Plaintiff does not file its amended complaint by **March 28, 2019**, the claims that were dismissed without prejudice in this Order will be dismissed with prejudice, and this case will proceed on Count III only.

Because this Court has granted Plaintiff leave to file an amended complaint, Defendant is not required to file an answer to the original Complaint. If Plaintiff files a timely amended complaint, Defendant must respond to the amended complaint within the period provided in the applicable rules. If Plaintiff does not file a timely amendment complaint, the order dismissing Counts I, II, and IV of the original Complaint will give Defendant a deadline to file an answer to the remaining portions of the Complaint.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 13, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RSMCFH, LLC vs. FAREHARBOR HOLDINGS, INC.; CV 18-00060 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**