UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| RSMCFH, LLC, a Hawaii limited liability company,<br><br>          Plaintiff,<br><br>     vs.<br><br>FAREHARBOR HOLDINGS, INC., a Delaware corporation,<br><br>          Defendant. | CIVIL 18-00348 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS RSMCFH, LLC'S FRAUD CLAIMS PURSUANT TO RULE 12(B)(6)**

          Before the Court is Defendant FareHarbor Holdings,

Inc.'s ("Defendant") Motion to Dismiss RSMCFH, LLC's Fraud

Claims Pursuant to Rule 12(b)(6) ("Motion"), filed on April 9,

2019.  [Dkt. no. 43.]  Plaintiff RSMCFH, LLC ("Plaintiff") filed

its memorandum in opposition on May 24, 2019, and Defendant

filed its reply on May 31, 2019.  [Dkt. nos. 50, 52.]  This

matter came on for hearing on June 14, 2019.  Defendant filed

its supplemental memorandum in support of preemption

("Preemption Memorandum") on July 1, 2019, and Plaintiff filed

its supplemental memorandum in opposition ("Preemption

Opposition") on July 15, 2019.  [Dkt. nos. 62, 65.]  For the

reasons set forth below, Defendant's Motion is hereby granted in

part, insofar as Counts I, II, and IV are dismissed, and the

Motion is denied in part, insofar as the dismissal is without prejudice.

## BACKGROUND

The relevant factual background of this case is set forth in this Court's Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6), [filed 2/13/19 (dkt. no. 30) ("2/13/19 Order"),[1]] and will not be repeated here.  The 2/13/19 Order denied Defendant's First Motion to Dismiss as to Plaintiff's breach of contract claim ("Count III") and dismissed the following claims without prejudice: violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Count I"); fraud ("Count II"); and violation of the Hawai`i Uniform Securities Act, Haw. Rev. Stat. §§ 485A-501 and 485A-509 ("Count IV").[2]  2/13/19 Order, 361 F. Supp. 3d at 986, 992.  The Fraud Claims were dismissed because: 1) Count I and IV failed to meet the heightened pleading standards for

_____

[1] The 2/13/19 Order is also available at 361 F. Supp. 3d 981.  The 2/13/19 Order addressed Plaintiff's Civil Complaint for Damages ("Complaint"), [filed 9/14/18 (dkt. no. 1),] and Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) ("First Motion to Dismiss"), [filed 11/16/18 (dkt. no. 20)].

[2] Counts I, II, and IV will be referred to collectively as the "Fraud Claims."

scienter under the Private Securities Litigation Reform Act of 1995 ("PSLRA"); id. at 988-89, 991-92; and 2) all of the Fraud Claims failed to meet the Fed. R. Civ. P. 9(b) heightened pleading standard, id. at 990-92.

Plaintiff's First Amended Civil Complaint for Damages ("Amended Complaint"), [filed March 12, 2019 (dkt. no. 31),] alleges the same four claims as its original Complaint.  The most relevant new factual allegations in the Amended Complaint are summarized below.

In September 2016, Defendant obtained $2.5 million in capital from Costella Kirsch ("Costella"), a venture capital firm, in exchange for warrants on Defendant's "most senior preferred security equal to 3.5% of the Company's outstanding shares, [i.e., the Series B Preferred Shares,] which percentage was not subject to dilution" ("Costella Warrants").  [Amended Complaint at ¶¶ 17, 34.]  Plaintiff unaware of the Costella Warrants until April 2018.  [Id. at ¶ 17.]

Around December 27, 2016, Defendant sent a draft Subscription Agreement to Plaintiff, but no provision in the draft agreement guaranteed the accuracy of the information Defendant had provided Plaintiff.  Plaintiff insisted that Defendant add such a provision.  [Id. at ¶ 31.]  Section 4(e) of

the Subscription Agreement that the parties ultimately executed

states Defendant

> has made available to [Plaintiff] all information
> reasonably available to [Defendant] that
> [Plaintiff] has requested for deciding whether to
> acquire the Preferred Stock, which for avoidance
> of doubt, includes: (i) payroll summaries for
> [Defendant] for each of the four quarters of
> 2016, (ii) a copy of [Defendant's] financial
> dashboard setting forth 2016 bookings, payments,
> fees, available balance and total customers, and
> (iii) [Defendant's] balance sheet dates as of
> September 30, 2016 (collectively, the "***Investor
> Information***").  No representation or warranty of
> [Defendant] contained in this Agreement contains
> any untrue statement of a material fact or to
> [Defendant's] knowledge, omits to state a
> material fact necessary in order to make the
> statement contained herein or therein not
> misleading in light of the circumstances under
> which they were made.  Further, to [Defendant's]
> knowledge, the Investor Information is true and
> correct in all material respects and fairly
> presents the financial condition and operating
> results of [Defendant] as of the dates, and for
> the periods indicated therein.

[Id. (emphasis in Amended Complaint).]

During a January 4, 2017 telephone call, Roy Pfund and

Chad Iwamoto asked George "Max" Valverde[3] to confirm the number

of financings, if any, that Defendant had conducted and to

describe the nature of the financings.  [Id. at ¶ 25.]  During

---

[3] Mr. Valverde was Defendant's Chief Operating Officer
("COO").  [Amended Complaint at ¶ 15.]

the same phone call and in response to this inquiry,
Mr. Valverde made three oral representations: 1) Defendant had
preferred investors, consisting of friends and family, who
contributed a total of $3 million to Defendant in a Series A
round; 2) the $3 million investment was the only outside
investment that Defendant had received as of that date; and
3) apart from the Series A investors, no one else held preferred
securities issued by Defendant.  [Id. at ¶ 26.]

        During a January 5, 2017 telephone call, Mr. Pfund and
Mr. Valverde discussed the previously issued warrants on
Defendant's stock.  Mr. Pfund asked whether the outstanding
warrants had been issued to an outside investor and whether such
warrants were on Defendant's preferred stock.  Mr. Valverde
reiterated that Defendant had no other holders of preferred
stock, and he stated that the outstanding warrants were issued
to employees on Defendant's common stock as incentive
compensation.  [Id. at ¶ 33.]

        On or around April 16, 2018, Zachary Hester[4] called
Mr. Iwamoto and Mr. Pfund and notified them of Booking Holdings

_____

        [4] Zachary Hester was Defendant's Chief Strategy Officer.
His brother, Lawrence Hester, was the Chief Executive Officer.
[Amended Complaint at ¶ 15.]  They will be referred to
collectively as "the Hesters."

Inc.'s ("Booking") imminent acquisition of Defendant ("Booking Acquisition"). [Id. at ¶ 48.]  Shortly thereafter, Plaintiff received a letter from Defendant "contain[ing] a release of any and all claims that Plaintiff had against [Defendant] or its officers or directors relating to Plaintiff's acquisition of [Defendant's] Series B Preferred shares." [Id.]  The letter required Plaintiff to execute the release in order to receive any consideration for Plaintiff's shares.  Michael Schmitt, Defendant's operations manager, told Mr. Pfund that Plaintiff's execution of the release was required prior to the closure of the Booking Acquisition and prior to Plaintiff's payment for its Series B Preferred shares.  According to Plaintiff, its execution of a release was neither a condition precedent to the closing of the Booking Acquisition nor a condition of Plaintiff's right to redeem its shares.  [Id. at ¶ 48.]

Plaintiff alleges the Investor Information Defendant provided to Plaintiff was false, in violation of § 4(e) of the final Subscription Agreement.  [Id. at ¶ 44.]  Plaintiff asserts it "is informed and believes" Defendant knew that, if Defendant had disclosed the Costella Warrants to Plaintiff, the information would have jeopardized Plaintiff's investment in Defendant.  According to Plaintiff, if it had known about the Costella Warrants, it would not have agreed to the terms in the

6

Subscription Agreement and would have insisted upon the same, or better, terms as the Costella Warrants.  [Id. at ¶ 47.]

In the instant Motion, Defendant seeks dismissal of the Fraud Claims with prejudice.  Defendant argues the Fraud Claims in the Amended Complaint are still insufficiently pled. In addition, Defendant argues Count II, Plaintiff's common law fraud claim, should be dismissed with prejudice because it is preempted by federal securities law.

## DISCUSSION

### I.   Consideration of Materials Beyond the Pleadings

Defendant submits two exhibits in support of the Motion: a series of emails between Mr. Valverde, Mr. Pfund, Mr. Iwamoto, and the Hesters between December 19, 2016 and December 28, 2016; [Motion, Decl. of Laura A. Kelly in Supp. of Motion ("Kelly Decl."), Exh. A;] and a different thread of emails between the same persons, and others, from December 19, 2016 to January 5, 2017, [id., Exh. B].  The standards applicable to the determination of whether to consider the exhibits in ruling on the Motion are set forth in the 2/13/19 Order and will not be repeated here.  See 2/13/19 Order, 361 F. Supp. 3d at 986-87.

Defendant argues the two sets of emails go to the core of Plaintiff's Fraud Claims and therefore are incorporated by

reference into Plaintiff's Amended Complaint.  Defendant's argument is rejected because no email within either Exhibit A or Exhibit B is referred to in the Amended Complaint, nor is any of those emails the basis of Plaintiff's claims.  Instead, the emails are "the basis of the defense that Defendant disclosed [the relevant financial information] to Plaintiff before Plaintiff's investment."  See id. at 987 (citing Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018)).[5]  Exhibits A and B therefore are not incorporated by reference in the Amended Complaint and will not be considered in ruling on the Motion.

## II. **Scienter**

Defendant first argues Count I must be dismissed because scienter is still insufficiently pled.  The requirements for pleading scienter are set forth in the 2/13/19 Order and will not be repeated here.  See id. at 988-89.  Plaintiff alleges that, during the January 4 and 5, 2017 telephone calls between Defendant's and Plaintiff's representatives, Mr. Valverde concealed the Costella Warrants.  [Amended Complaint at ¶¶ 26, 33.]

---

[5] The United States Supreme Court denied certiorari.  Hagan v. Khoja, 139 S. Ct. 2615 (2019).

8

In light of the Amended Complaint's factual allegations, which are presumed to be true for purposes of a motion to dismiss, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a "malicious inference is at least as compelling as any opposing innocent inference."  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009) (citations omitted).  It is difficult to presume that Mr. Valverde, Defendant's COO, would not know about the Costella Warrants and, after specific inquires by Plaintiff's representatives, would fail to disclose the Costella Warrants, unless he possessed the state of mind alleged in the Amended Complaint.  Furthermore, given the value of the Costella Warrants, Mr. Valverde's failure to disclose the Costella Warrants after the specific inquiries from Plaintiff's representatives can reasonably be construed as: 1) "a highly unreasonable omission" that misled Plaintiff; and 2) "an extreme departure from the standards of ordinary care." See id. (citations and quotation marks omitted).  Plaintiff has therefore pled sufficient factual allegations to give rise to a strong inference of scienter.  See id.

To the extent the Motion seeks dismissal of Count I on the ground that Plaintiff failed to sufficiently plead scienter, the Motion is denied.  Because the standards applicable to Plaintiff's § 10(b)/Rule 10b-5 claim also apply to Plaintiff's

§ 485A-501(a) claim, see 2/13/19 Order, 361 F. Supp. 3d at 991

(citing Haw. Rev. Stat. § 485A-509(a)), the Motion is also

denied as to Defendant's request to dismiss Count IV for failure

to sufficiently plead scienter.

## III. **Economic Loss**

Defendant next argues Count I must be dismissed

because Plaintiff failed to plead sufficient factual allegations

regarding economic loss.  The Ninth Circuit has recognized that

the out-of-pocket measure of damages used in Affiliated Ute

Citizens of Utah v. United States, 406 U.S. 128 (1972), "is

generally the appropriate measure of damages to be applied in

cases arising under sections 10(b) and 28(a)."[6] DCD Programs

Ltd. v. Leighton, 90 F.3d 1442, 1446 (9th Cir. 1996) (some

citations omitted) (citing Randall v. Loftsgaarden, 478 U.S.

647, 661-62, 106 S. Ct. 3143, 3151-52 (1986)).  An out-of-pocket

measure is "the difference between the price [the allegedly

defrauded purchaser] paid for a security and the actual value of

that security at the time of the purchase, plus interest on the

difference."  Id. at 1447 (some citations omitted) (citing

Affiliated Ute, 406 U.S. at 155, 92 S. Ct. at 1473).

---

[6] Section 28(a) of the Securities Exchange Act of 1934 is 15
U.S.C. § 78bb(a).

In contrast, "[t]he benefit-of-the-bargain measure of damages allows a plaintiff to recover the difference between what the plaintiff **expected** he would receive, had the defendant's representations been true, and the amount [the plaintiff] **actually received**."  Id. at 1449 (emphases and some alterations in DCD Programs) (citations and internal quotation marks omitted).  The Ninth Circuit noted it

> has never held that [benefit-of-the-bargain damages] are permissible under Rule 10b-5.  In addition, neither Affiliated Ute nor Randall suggested that such damages may be recoverable under section 10(b); instead, in those cases the Court limited its list of permissible damages under that section to out-of-pocket losses, rescissionary damages, or restitutionary damages.

Id.

Plaintiff seeks benefit-of-the-bargain damages.  The Amended Complaint alleges that, had Defendant disclosed the existence of the Costella Warrants, Plaintiff would have demanded and received more favorable terms for its investment in Defendant.  Those more favorable terms would have ultimately resulted in Plaintiff receiving a larger portion of the Booking Acquisition proceeds than they are currently entitled to receive.  [Amended Complaint at ¶¶ 43, 56.]  Plaintiff argues that, while it is currently entitled "to only a 2x return on its investment," Costella received "a 6x return on its investment." [Id. at ¶ 2.]  Similarly, Plaintiff asserts its Series B

Preferred shares were subject to dilution, but the stake held by Costella was not subject to dilution. [Id.] Both Plaintiff's decreased return damages and its dilution damages constitute benefit-of-the-bargain damages. See DCD Programs, 90 F.3d at 1449. Because the Ninth Circuit has never recognized a plaintiff's ability to recover benefit-of-the-bargain damages in § 10(b)/Rule 10b-5 claims, Plaintiff's theories of decreased return and dilution do not constitute economic loss for purposes of the PSLRA pleading requirements.

Plaintiff further argues that economic loss is sufficiently pled when a plaintiff claims entitlement to any sort of relief. [Mem. in Opp. at 38-39 (citing Doe v. United States Dept. of Justice, 753 F.2d 1092, 1104 (D.C. Cir. 1985)).] Under this theory, Plaintiff contends it has sufficiently pled economic loss because Defendant has not yet paid Plaintiff the $10 million that Plaintiff is entitled to receive as a result of the Booking Acquisition. See Amended Complaint at ¶ 50. Plaintiff's argument is unpersuasive. Doe is neither binding legal authority in this case nor is it persuasive authority. Because Doe involved wrongful termination claims, 753 F.2d at 1095, the PSLRA pleading requirements were not implicated. Plaintiff's argument that any alleged entitlement to relief

satisfies the economic loss PSLRA pleading requirement is therefore rejected.

Defendant also argues Plaintiff's allegations regarding economic loss are insufficient as to the issue of causation.  Ultimately, "[t]o prove loss causation, [the Plaintiffs] must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the [Plaintiffs]." Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 608 (9th Cir. 2014) (some alterations in Or. Pub.) (citation and quotation marks omitted).  In order for Count I to survive a motion to dismiss, Plaintiff must allege factual allegations that, if proven, would establish a causal connection between the pre-investment misrepresentations and omissions by Defendant and the loss that Plaintiff suffered.  See id.

First, as to the withholding of the $10 million payment, Plaintiff alleges Defendant is refusing to make the payment because Plaintiff will not execute a release.  See, e.g., Amended Complaint at ¶ 71.  The alleged "loss" of the $10 million therefore did not occur because of the alleged pre-investment misrepresentations and omissions by Defendant. Thus, the "loss" of the $10 million payment does not satisfy the PSLRA economic loss pleading requirement.

13

Plaintiff also alleges that, had it known of the Costella Warrants, it would have demanded terms that were better than or comparable to the terms of the Costella Warrants, including anti-dilution provisions and the per-share price. [Amended Complaint at ¶ 47.]  Plaintiff contends Defendant would have accepted such terms because Defendant was "in critical need of capital to hire additional employees and to otherwise expand its business," in order to make Defendant "a viable candidate for acquisition."  [Id. at ¶ 16.]  Further, according to Plaintiff, Defendant had "few, if any, acceptable sources of financing."  [Id. at ¶ 17.]  Plaintiff claims "Defendant will be hard pressed to persuade anyone that it would have denied Plaintiff the same terms in return for Plaintiff's much needed investment."  [Mem. in Opp. at 44.]

However, Plaintiff also recognizes that, "[b]ecause the convertible debt financing and related Preferred Warrants stood to substantially dilute the Hesters' and Mr. Valverde's ownership stake in [Defendant], they hoped to avoid similar terms in any subsequent financing and to maintain their control of [Defendant] to the greatest extent possible."  [Amended Complaint at ¶ 20.]  Further, during a December 19, 2016 dinner meeting, the Hesters told Mr. Pfund and Mr. Iwamoto "they were reluctant to seek funding from a venture capital investor

14

because such an investor would require a significant share of [Defendant] in return and they did not want to lose control of [Defendant]." [Id. at ¶ 23.] Accepting all of Plaintiff's factual allegations as true, there is an insufficient basis to support their position that Defendant would have acquiesced to Plaintiff's demand for terms comparable to, or better than, the terms of the Costella Warrants.

In sum, Plaintiff's Amended Complaint fails to satisfy the PSLRA economic loss pleading requirement because Plaintiff has only alleged benefit-of-the-bargain damages and because Plaintiff's allegations regarding loss causation are insufficient. Defendant's Motion is therefore granted insofar as Count I is dismissed for failure to plead economic loss. The same analysis applies to Count IV, which is also dismissed. However, the Motion is denied as to Defendant's request that the dismissal be with prejudice. The dismissal of Counts I and IV is without prejudice because it is arguably possible for Plaintiff to cure the defects in those claims by amendment. See 2/13/19 Order, 361 F. Supp. 3d at 990 (citing Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1118 (9th Cir. 2013)).

IV.  **Fraud**

A.  **Rule 9(b) Standards**

In the Motion, Defendant argues Count II, Plaintiff's common law fraud claim, must be dismissed because it is insufficiently pled.  The 2/13/19 Order listed four elements of a fraud claim: "'(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them.'"  361 F. Supp. 3d at 990 (quoting Shoppe v. Gucci Am., Inc., 94 Hawai`i 368, 386, 14 P.3d 1049, 1067 (2000)).  The Hawai`i Supreme Court has described these four elements as specific to "a fraud claim based on a failure to disclose a material fact."  Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai`i 277, 298, 172 P.3d 1021, 1042 (2007).  In addition, all fraud claims "require[] proof of duty, breach of duty, causation, and damages."  Id. (citations omitted).

As noted in the 2/13/19 Order with regard to the fraud claim in the original Complaint, the Rule 9(b) heightened pleading standard applies to Count II of the Amended Complaint.  See 361 F. Supp. 3d at 990.  Causation and damages are part of the "'who, what, when, where, and how' of the alleged

16

misrepresentations and omissions that Count I[I] is based upon,"
and therefore they must be pled with particularity.[7]   See 2/13/19
Order, 361 F. Supp. 3d at 990 (quoting Kearns v. Ford Motor Co.,
567 F.3d 1120, 1124 (9th Cir. 2009)).   The analysis of
Plaintiff's causation and damages allegations for the fraud
claim is the same as the analysis of Plaintiff's economic loss
allegations for the securities claims.   Thus, for the reasons
stated *supra* Discussion Section III, Count II must be dismissed
because Plaintiff has failed to plead causation and damages with
particularity.

    **B.**    **Preemption**

       Defendant contends the dismissal of Count II must be
with prejudice because any attempt to amend the claim would be
futile, since Plaintiff's fraud claim under Hawai`i common law
is preempted by federal securities law.   Defendant acknowledges
that the preemption provision in Title I of the Securities
Litigation Uniform Standards Act of 1998 ("SLUSA") only applies
to class actions and is therefore inapplicable to the instant

_____

     [7] As noted in the 2/13/19 Order, Rule 9(b) does not require
intent to be pled with particularity.   361 F. Supp. 3d at 990-91
n.4.   However, this is a distinction without a difference at
this stage because Plaintiff's scienter allegations would also
be sufficient to plead intent with particularity.   See *supra*
Discussion Section II.

case.[8] [Preemption Mem. at 1.] Further, preemption cannot be inferred because "Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions." See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 383 (1996) (citing 15 U.S.C. § 78bb(a) (preserving "all other rights and remedies that may exist at law or in equity")). Defendant argues the third type of preemption – implied preemption, also known as obstacle preemption – applies in this case. [Preemption Mem. at 1.]

> The Supremacy Clause unambiguously provides
> that if there is any conflict between federal and
> state law, federal law shall prevail." Gonzales
> v. Raich, 545 U.S. 1, 29, 125 S. Ct. 2195, 162 L.
> Ed. 2d 1 (2005). This is so even if the federal
> statutory language does not explicitly manifest

---

[8] 15 U.S.C. § 78bb(f)(1) states:

> No covered **class action** based upon the statutory
> or common law of any State or subdivision thereof
> may be maintained in any State or Federal court
> by any private party alleging—
>
> > (A) a misrepresentation or omission of a
> > material fact in connection with the
> > purchase or sale of a covered security; or
> >
> > (B) that the defendant used or employed any
> > manipulative or deceptive device or
> > contrivance in connection with the purchase
> > or sale of a covered security.

(Emphasis added.)

18

Congress's preemptive intent.  <u>See</u> <u>Altria Grp.,</u>
<u>Inc. v. Good</u>, 555 U.S. 70, 76–77, 129 S. Ct. 538,
172 L. Ed. 2d 398 (2008) (internal citations
omitted).  Preemption arises when "compliance
with both federal and state regulations is a
physical impossibility, or . . . **state law stands**
**as an obstacle to the accomplishment and**
**execution of the full purposes and objectives of**
**Congress**."  <u>Bank of Am. v. City & Cty. of S.F.</u>,
309 F.3d 551, 558 (9th Cir. 2002) (internal
citations and quotation marks omitted).

<u>Berezovsky v. Moniz</u>, 869 F.3d 923, 930 (9th Cir. 2017)

(alterations in <u>Berezovsky</u>) (emphasis added).

Plaintiff's pursuit of a Hawai`i common law fraud

claim in this case would not "stand[] as an obstacle to the

accomplishment and execution of the full purposes and objectives

of" federal securities law.  <u>See</u> <u>Bank of Am.</u>, 309 F.3d at 558.

In support of its position that Plaintiff's fraud claim is

preempted, Defendant notes that, "[t]hrough the PSLRA and SLUSA,

Congress adopted strict guidelines for securities fraud claims,

in order to deter the filing of frivolous lawsuits and to

prevent discovery being used as a vehicle to bolster otherwise

non-meritorious claims."  [Preemption Mem. at 2.]  However,

Plaintiff's common law fraud claim has been dismissed for the

same reasons as Plaintiff's securities claims.  Thus, at this

time, there is no danger that Plaintiff may use discovery on a

properly pled fraud claim in an attempt to bolster its

potentially non-meritorious securities claims.  Defendant

effectively acknowledges this reality, noting that:

> Obstacle preemption also should prevent plaintiff
> from proceeding on a common law fraud claim based
> on the same facts as its dismissed 10b-5 claim,
> but the issue has never arisen before the Ninth
> Circuit (or any court in this state), largely
> because the same failings that lead to dismissal
> of Rule 10b-5 claims typically lead to dismissal
> of their counterpart (mirror image) state law
> fraud claims under Rule 9(b).

[Id. at 1-2 n.1.]  Defendant's preemption argument is therefore

rejected.

The Motion is denied as to Defendant's request that

the dismissal of Count II be with prejudice.  Count II is

dismissed without prejudice because it is arguably possible for

Plaintiff to cure the defects in the claim by amendment.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to

Dismiss RSMCFH, LLC's Fraud Claims Pursuant to Rule 12(b)(6),

filed April 9, 2019, is HEREBY GRANTED IN PART AND DENIED IN

PART.  The Motion is GRANTED insofar as Counts I, II, and IV are

HEREBY DISMISSED.  The Motion is DENIED insofar the dismissal of

those claims is WITHOUT PREJUDICE.

If Plaintiff choses to file a second amended

complaint, Plaintiff is ORDERED to do so by **September 27, 2019.**

Plaintiff is only granted leave to add new factual allegations

to support Counts I, II, and IV.  Plaintiff does not have leave

to add any new parties, claims, or theories of liability.  If

Plaintiff does not file its second amended complaint by

**September 27, 2019**, Counts I, II, and IV will be dismissed with

prejudice, and this case will proceed on Count III only.

Because this Court has granted Plaintiff leave to file

a second amended complaint, Defendant is not required to file an

answer to the Amended Complaint.  If Plaintiff files a timely

second amended complaint, Defendant must respond to the second

amended complaint within the period provided in the applicable

rules.  If Plaintiff does not file a timely second amendment

complaint, an order dismissing Counts I, II, and IV of the

Amended Complaint with prejudice will be issued, and that order

will give Defendant a deadline to file an answer to Count III in

the Amended Complaint.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, August 30, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RSMCFH, LLC VS. FAREHARBOR HOLDINGS, INC.;** CV 18-00348 LEK-WRP;
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS RSMCFH, LLC'S FRAUD CLAIMS PURSUANT TO RULE 12(B)(6)