```
                UNITED STATES DISTRICT COURT
                     DISTRICT OF HAWAII
```

| | |
|---|---|
| RSMCFH, LLC, a Hawaii limited liability company,<br><br>           Plaintiff,<br><br>     vs.<br><br>FAREHARBOR HOLDINGS, INC., a Delaware corporation,<br><br>           Defendant. | CIVIL 18-00348 LEK-WRP |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS RSMCFH, LLC'S FRAUD CLAIMS IN ITS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**

        Before the Court is Defendant FareHarbor Holdings, Inc.'s ("Defendant"[1]) Motion to Dismiss RSMCFH, LLC's Fraud Claims in Its Second Amended Complaint Pursuant to Rule 12(b)(6), filed October 10, 2019 ("10/10/19 Motion"). [Dkt. no. 71.] Plaintiff RSMCFH, LLC ("Plaintiff") filed its memorandum in opposition on November 6, 2019. [Dkt. no. 73.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Defendant's 10/10/19 Motion is hereby denied for the reasons set forth below.

---

       [1] The pleadings also refer to Defendant FareHarbor Holdings, Inc. as "FareHarbor" and "the Company."

**BACKGROUND**

Plaintiff filed its Civil Complaint for Damages ("Complaint") on September 14, 2018. [Dkt. no. 1.] The Complaint alleged the following claims: violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Count I"); a common law fraud claim ("Count II"); a claim that Defendant breached the Subscription Agreement and the Certificate of Incorporation ("Count III"); and violations of the Hawai`i Uniform Securities Act, Haw. Rev. Stat. §§ 485A-501 and 485A-509 ("Count IV"). Defendant filed a motion to dismiss on November 16, 2018 ("11/16/18 Motion"), which was granted in part and denied in part in an order issued on February 13, 2019 ("2/13/19 Order"). [Dkt. nos. 20, 30.[2]] The 11/16/18 Motion was granted insofar as Counts I, II, and IV ("Fraud Claims") were dismissed, and the motion was denied as to Count III, and as to the motion's request that the dismissal of the Fraud Claims be with prejudice. 2/13/19 Order, 361 F. Supp. 3d at 992.

Plaintiff's First Amended Civil Complaint for Damages ("First Amended Complaint"), [filed 3/12/19 (dkt. no. 31),] alleged the same four claims as the original Complaint. On

---

[2] The 2/13/19 Order is also available at 361 F. Supp. 3d 981.

April 9, 2019, Defendant filed a motion to dismiss the First Amended Complaint ("4/9/19 Motion"), which was granted in part and denied in part in an order issued on August 30, 2019 ("8/30/19 Order"). [Dkt. nos. 43, 66.[3]] The 4/9/19 Motion was denied as to Defendant's request to dismiss Counts I and IV for failure to sufficiently plead scienter. 8/30/19 Order, 2019 WL 4143290, at *3-4. However, all of the Fraud Claims were dismissed without prejudice because causation and damages were insufficiently pled. Id. at *6-7.

Plaintiff's Second Amended Civil Complaint for Damages ("Second Amended Complaint"), [filed September 26, 2019 (dkt. no. 70),] alleges the same four claims. The central factual allegations in this case are set forth in the 2/13/19 Order and the 8/30/19 Order, and they will not be repeated here. This Order focuses upon the factual allegations Plaintiff added after the issuance of the 8/30/19 Order.[4]

---

[3] The 8/30/19 Order is also available at 2019 WL 4143290.

[4] Plaintiff includes additional allegations about its reliance on Defendant's representations, and Plaintiff makes various non-substantive amendments, such as to terminology. See, e.g., Second Amended Complaint at ¶¶ 1-2. These amendments will not be addressed in this Order because they are not relevant to the issues raised in the 10/10/19 Motion.

### A. Measure of Damages

Plaintiff added the following allegations in the Second Amended Complaint:

> The undisclosed Preferred Warrants also materially reduced the value of the Series B Preferred shares that Plaintiff acquired. Because the undisclosed Preferred Warrants entitled their holder to a non-dilutable right to receive approximately 3.5% of the Company's liquidation proceeds, Plaintiff's own liquidation rights were reduced by an equivalent percentage. The reduction in value of Plaintiff's Series B shares caused by FareHarbor's fraud was confirmed when Booking acquired the Company and FareHarbor diverted approximately 3.5% of the proceeds, or $8,750,000, to the holder of the Preferred Warrants. But for FareHarbor's fraud, none of the proceeds from the Booking acquisition would have been distributed to the holder of the Preferred Warrants and there would have been approximately $8,750,000 in additional liquidation proceeds available for distribution to Plaintiff and the Company's other shareholders. Plaintiff's pro rata share of such diverted funds exceeds $200,000.

Second Amended Complaint at ¶ 3; see also id. at ¶ 17 (alleging Costella Kirsch ("Costella") was entitled to approximately 3.5% of Defendant's acquisition/liquidation proceeds because of Costella's preferred warrants ("Costella Warrants" or "Preferred Warrants")), ¶ 45 (allegations similar to ¶ 3).

The Second Amended Complaint provides further explanation of Plaintiff's theory that Defendant's failure to

4

disclose the existence and terms of the Costella Warrants[5] to Plaintiff negatively impacted the price of the shares Plaintiff purchased:

> The Preferred Warrants and their terms had a material impact on the value of any shares subsequently issued by the Company and the liquidation rights of such shares. Because the Preferred Warrants entitled Costella Kirsch to approximately 3.5% of the Company's liquidation proceeds, the Preferred Warrants stood to reduce the liquidation rights of subsequent investors and had a direct adverse impact on the value of shares subsequently issued by the Company, including the Company's Series B shares. As a result any subsequent investor, including Plaintiffs, would have wanted to know about the outstanding Preferred Warrants, their terms and their effect on the investor's liquidation rights. Because FareHarbor was a private company, there was no public market and no readily determinable market price for its shares. The price to be paid for and value of newly issued shares in a private company, like FareHarbor's Series B shares, is typically determined by a number of factors, including the price paid by prior investors for the Company's securities and the liquidation rights of existing investors. . . .
>
> . . . .
>
> . . . The price that Plaintiff was prepared to pay for the Company's Series B Shares depended upon the number and terms of preferred and other securities previously issued by the Company, including their associated liquidation rights. In general, the fewer preferred securities outstanding at the time of Plaintiff's investment, the more liquidation proceeds would

---

[5] Plaintiff also added the allegation that no one informed Plaintiff about Costella's investment in Defendant. [Second Amended Complaint at ¶ 24.]

5

>           be available for distribution to Plaintiff and
>           the more valuable the Series B shares would be
>           and the higher the price Plaintiff would be
>           prepared to pay.  Plaintiff would not have agreed
>           to purchase the Series B shares at the price it
>           paid had FareHarbor disclosed that the Company
>           had an investor who held a preferred security
>           entitling it to 3.5% of the Company's shares and
>           the right to receive a non-dilutable 3.5% share
>           of the Company's liquidation proceeds. . . .

[Second Amended Complaint at ¶¶ 20, 28.]

Plaintiff also includes additional allegations about Defendant's failure to pay the amounts due to Plaintiff from Booking Holdings Inc.'s ("Booking") acquisition of Defendant, [id. at ¶¶ 4, 52-53,] and the cancellation of Plaintiff's shares, [id. at ¶¶ 43, 50].

### B. Causation

The Second Amended Complaint clearly puts forth Plaintiff's theory that, because of Defendant's dire need for capital, Defendant would have had no choice but to accept Plaintiff's demand for comparable terms to those of the Costella Warrants, had the Costella Warrants been properly disclosed to Plaintiff prior to its investment. [Id. at ¶ 49.] Plaintiff added the allegations that: 1) when Plaintiff's representatives began discussing the possibility of an investment, Defendant had recently used the funds Costella invested to acquire Activity Link Solutions; and 2) Zachary Hester, Lawrence Hester, and George "Max" Valverde realized that Defendant needed additional

6

capital to fund Defendant's operations and to improve Defendant's appeal as an acquisition target.[6] [Id. at ¶¶ 21-22.] Plaintiff also added the allegation that it is common in securities transactions for subsequent investors to demand the same or comparable terms that other investors received during that time period. [Id. at ¶¶ 28, 36.]

> That is particularly true where, as here, the risks associated with the later investor's investment have increased in comparison to the earlier investor. Here, Costella Kirsch had made its investment in the Company just a few months prior to Plaintiff's contemplated investment. And despite Costella Kirsch's recent investment, the Company remained in desperate need of capital. The fact that the Company needed substantial additional capital just months after receiving a $2.5 million investment from Costella Kirsch increased the risks associated with an investment by Plaintiff in the Company. Among other things, the Company's funding needs increased the risks that the Company would have insufficient capital to meet its operational needs and its goal of being acquired. Had FareHarbor disclosed Costella Kirsch's investment in the Company as required, FareHarbor would have been in no position to refuse to grant to Plaintiff terms comparable to those it had only just recently granted to Costella Kirsch. Regardless, Plaintiff would not have invested in the Company if it had not received comparable terms to Costella Kirsch. If the Company wanted Plaintiff's investment, it would have had no choice but to grant Plaintiff such terms.

---

[6] Zachary Hester was Defendant's Chief Strategy Officer. His brother, Lawrence Hester, was the Chief Executive Officer, and George Valverde was the Chief Operating Officer. [Second Amended Complaint at ¶ 15.]

7

[Id. at ¶ 36.]

In the 10/10/19 Motion, Defendant contends the factual allegations supporting the Fraud Claims are still insufficient, in light of the analysis in the 2/13/19 Order and the analysis in the 8/30/19 Order. Defendant argues the Fraud Claims must be dismissed with prejudice because Plaintiff had multiple opportunities to amend but still failed to plead sufficient factual allegations.

**DISCUSSION**

**I.   Count I**

  **A.   Out-of-Pocket Measure of Damages**

The 8/30/19 Order ruled that an out-of-pocket measure of damages was appropriate for Count I, and Count I was insufficiently pled because the First Amended Complaint only alleged benefit-of-the-bargain damages. 2019 WL 4143290, at *4. "An out-of-pocket measure is 'the difference between the price [the allegedly defrauded purchaser] paid for a security and the actual value of that security at the time of the purchase, plus interest on the difference,'" whereas "'[t]he benefit-of-the-bargain measure of damages allows a plaintiff to recover the difference between what the plaintiff **expected** he would receive, had the defendant's representations been true, and the amount [the plaintiff] **actually received**.'" Id. (alterations and

emphases in 8/30/19 Order) (quoting DCD Programs Ltd. v. Leighton, 90 F.3d 1442, 1447 & 1449 (9th Cir. 1996)).

The additional factual allegations in the Second Amended Complaint describe more than the benefit-of-the-bargain damages alleged in the First Amended Complaint. Plaintiff provides further factual allegations regarding how Defendant's failure to disclose the Costella Warrants affected both Plaintiff's decision to invest and the price per share Plaintiff agreed to pay. See, e.g., Second Amended Complaint at ¶¶ 3, 20, 28. These factual allegations, which are presumed to be true for purposes of a motion to dismiss, are sufficient to plead a plausible argument that Plaintiff suffered out-of-pocket damages. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Defendant's argument that Plaintiff failed to cure the measure-of-damages defect identified in the 8/30/19 Order is therefore rejected.

**B.  Loss Causation**

In response to the 4/9/19 Motion, Plaintiff asserted that, had it known of the Costella Warrants, it would have demanded terms that were better than or comparable to the terms of the Costella Warrants, and Defendant would have accepted those terms. 8/30/19 Order, 2019 WL 4143290, at *5. This argument was rejected because, even accepting all of the First Amended Complaint's factual allegations as true, there was an

9

insufficient basis to support Plaintiff's argument that Defendant would have acquiesced to Plaintiff's demands for more favorable terms. Id. at *5-6. Plaintiff now pleads additional allegations regarding Defendant's financial position during the time period when Plaintiff was considering whether to invest in Defendant, as well as allegations regarding common negotiation practices in the purchase of securities. See, e.g., Second Amended Complaint at ¶¶ 21-22, 36. In ruling on the 10/10/19 Motion, this Court cannot opine as to whether Plaintiff will ultimately be able to prove those factual allegations; this Court must assume they are true. Although it is a close question, when the Second Amended Complaint's factual allegations are assumed to be true, they are sufficient to plead a plausible loss causation argument. See 8/30/19 Order, 2019 WL 4143290, at *5 (quoting Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 608 (9th Cir. 2014)). Defendant's argument that Plaintiff failed to cure the causation defect identified in the 8/30/19 Order is therefore rejected.

    C.    **Summary**

The Second Amended Complaint's factual allegations regarding Plaintiff's damages and causation satisfy both the heightened pleading standard for § 10(b) and Rule 10b-5 claims and the Fed. R. Civ. P. 9(b) heightened pleading standard for fraud claims in general. See 2/13/19 Order, 361 F. Supp. 3d at

988 (discussing the § 10(b) and Rule 10b-5 pleading requirements and the Rule 9(b) pleading requirements). The 10/10/19 Motion is therefore denied as to Count I.

## II. Other Counts

Because the analysis of Count I also applies to Count IV, see 8/30/19 Order, 2019 WL 4143290, at *6, the 10/10/19 Motion is also denied as to Count IV. Further, because Count I satisfies the Rule 9(b) heightened pleading standard for fraud claims and Counts I and II rely on the same factual allegations, Count II also satisfies the Rule 9(b) pleading standard.[7] The 10/10/19 Motion is therefore denied as to Count II.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss RSMCFH, LLC's Fraud Claims in Its Second Amended Complaint Pursuant to Rule 12(b)(6), filed October 10, 2019, is HEREBY DENIED.

IT IS SO ORDERED.

---

[7] Because Plaintiff sufficiently pleads factual allegations supporting out-of-pocket damages, it is not necessary to address Plaintiff's argument that benefit-of-the-bargain damages are recoverable in a fraud claim under Hawai`i common law. See Mem. in Opp. at 18-20.

DATED AT HONOLULU, HAWAI`I, January 17, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RSMCFH, LLC VS. FAREHARBOR HOLDINGS, INC.; CV 18-00348 LEK-WRP; ORDER DENYING DEFENDANT'S MOTION TO DISMISS RSMCFH, LLC'S FRAUD CLAIMS IN ITS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**